IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHWESTERN DIVISION

| | |
|---|---|
| STEVEN WAYNE HALL, | ) |
| Plaintiff, | ) |
| v. | ) Case No. 3:24-cv-05035-MDH |
| FRANK BISIGNANO, Commissioner of the Social Security Administration, | ) |
| Defendant. | ) |

## ORDER

Before the Court is Plaintiff Steven Wayne Hall's appeal of Defendant Social Security Administration Commissioner's ("Commissioner") denial of his applications for a period of disability and disability insurance benefits under Title II and supplemental income benefits under Titles XVI of the Social Security Act. Plaintiff has exhausted his administrative remedies and the matter is now ripe for judicial review. After carefully reviewing the record, the Court finds that the administrative law judge's ("ALJ") decision is affirmed.

## BACKGROUND

Plaintiff filed his applications for a period of disability and disability insurance as well as supplemental income benefits on December 20, 2021. (Tr. 14). Plaintiff was born on July 19, 1979, and, in both applications, Plaintiff alleged disability beginning on July 1, 2021. The ALJ found that Plaintiff had the following severe impairments: diabetes mellitus with neuropathy, congestive heart failure with coronary artery bypass grafting, status post enterococcal endocarditis and prosthetic valve endocarditis; moderate bilateral hip osteoarthritis and degenerative joint disease, left foot ulcer and osteomyelitis, and obesity. (Tr. 17). However, the ALJ found that Plaintiff did

not have an impairment or combination of impairments listed in or medically equal to one contained in 20 C.F.R. 404, Subpart P, Appendix 1. (Tr. 19). The ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except:

> occasionally climb ramps stairs, never climb ladders, ropes or scaffolds. Occasionally stoop and crawl; must avoid concentrated exposure to extreme heat, extreme cold, wetness, humidity, vibration, respiratory irritants such as fumes, odors, dust, gases, and poor ventilation and all exposure to hazards such as dangerous machinery and unprotected heights.

(Tr. 21). The ALJ additionally found that Plaintiff is capable of performing past relevant work as an architectural drafter as it does not require the performance of work-related activities precluded by Plaintiff's RFC. (Tr. 25). Relying on vocational expert testimony, the ALJ concluded that in addition to past relevant work, there are other jobs that exist in significant numbers in the national economy that the Plaintiff also can perform, considering the Plaintiff's age, education, work experience, and RFC. (Tr. 26). Consequently, the ALJ found Plaintiff not disabled. (Tr. 28).

**STANDARD**

The Court's role in reviewing an ALJ's decision is to determine whether the "findings are supported by substantial evidence in the record as a whole." *Page v. Astrue*, 484 F.3d 1040, 1042-43 (8th Cir. 2007), *citing Haggard v. Apfel*, 175 F.3d 591, 594 (8th Cir.1999). "Substantial evidence is relevant evidence which a reasonable mind would accept as adequate to support the Commissioner's conclusion." *Id.* "The fact that some evidence may support a conclusion opposite from that reached by the Commissioner does not alone permit our reversal of the Commissioner's decision." *Id., citing Kelley v. Barnhart*, 372 F.3d 958, 961 (8th Cir.2004); *Travis v. Astrue*, 477 F.3d 1037, 1040 (8th Cir. 2007). If the record contains substantial evidence to support the Commissioner's decision, the Court may not reverse the decision simply because substantial

evidence exists in the record that would have supported a contrary outcome. *Krogmeier v. Barnhart*, 294 F.3d 1019, 1022 (8th Cir. 2002). In other words, the Court cannot reverse simply because it would have decided the case differently. *Id., citing Woolf v. Shalala*, 3 F.3d 1210, 1213 (8th Cir. 1993). Further, the Court defers to the ALJ's determinations of the credibility of witness testimony, as long as the ALJ's determinations are supported by good reasons and substantial evidence. *Pelkey v. Barnhart,* 433 F.3d 575, 578 (8th Cir. 2006).

## DISCUSSION

Plaintiff argues two points on appeal. Plaintiff argues the ALJ misapplied the requirements of Social Security Ruling ("SSR") 16-3p and to the extent that ALJ considered certain factors for evaluating subjective statements as required by SSR 16-3p, the ALJ's analysis is not sufficient to support rejecting Plaintiff's subjective statements. The Court will take each argument in turn.

**I.      Requirements of SSR 16-3p**

Plaintiff argues that the ALJ misapplied the requirements of SSR 16-3p. Specifically, Plaintiff argues that according to the ruling, an ALJ must evaluate whether an individual's subjective symptoms could reasonably be accepted as consistent with the evidence. Plaintiff argues that instead of using that standard, the ALJ looked for persuasive corroborating evidence. Because of this Plaintiff asserts that the ALJ's alleged misunderstanding of the standard of SSR 16-3p tainted the analysis of Plaintiff's subjective statements. Defendant argues there is no evidence in the record to support that the ALJ did not understand the dictates of SSR 16-3p. Defendant shows the ALJ cited to the SSR 16-3p three times within the decision and argues that Plaintiff's argument based on the difference between corroboration and consistency is semantic.

SSR 16-3 deals with clarifying the subjective system evaluation as it relates to the consideration of objective medical evidence and other evidence. In relevant part SSR 16-3 states:

3

> In determining whether an individual is disabled, we consider all of the individual's symptoms, including pain, and the extent to which the symptoms can reasonably be accepted as consistent with the objective medical and other evidence in the individual's record. We define a symptom as the individual's own description or statement of his or her physical or mental impairment(s). Under our regulations, an individual's statements of symptoms alone are not enough to establish the existence of a physical or mental impairment or disability. However, if an individual alleges impairment-related symptoms, we must evaluate those symptoms using a two-step process set forth in our regulations.

Soc. Sec. Ruling 16-3p: titles II & XVI: Evaluation of Symptoms in Disability Claims, SSR 16-3P (S.S.A. Oct. 25, 2017).

The Court finds that the ALJ did not err in applying the requirements of SSR 16-3p. Plaintiff is correct that SSR 16-3p explicitly states that an ALJ, when determining whether an individual is disabled, will consider all of the individual's symptoms and the extent to which the symptoms can reasonably be accepted as consistent with the objective medical and other evidence in the individual's record. However, SSR 16-3p goes on to say that "an individual's statements of symptoms alone are not enough to establish the existence of a physical or mental impairment or disability." This creates a presumption that while symptoms need to be consistent with the medical record, the ALJ would not err in finding corroborating evidence within the medical records or other evidence that would support Plaintiff's assertions. The Court notes that Defendant has cited appropriately to SSR 16-3p in the decisions multiple times and has applied the standard appropriately. The Court therefore finds there is substantial evidence in the record to conclude that the ALJ appropriately applied the requirements of SSR 16-3p in her decision regarding Plaintiff's alleged disability.

**II.     ALJ's Analysis Under SSR 16-3p**

Plaintiff next argues that, to the extent the ALJ considered certain factors for evaluating subjective statements as required by SSR 16-3p, the ALJ's analysis is not sufficient to support

4

rejecting Plaintiff's statements. In support, Plaintiff cites four instances where he alleges the ALJ's analysis was not sufficient. Defendant argues that the ALJ sufficiently assessed Plaintiff's subjective statements. The Court will take each instance Plaintiff raises in turn.

### A. No Objective Evidence of Physiological Abnormality

Plaintiff asserts that the ALJ stated there was no "objective evidence of physiological abnormality reasonably expected to result in the degree of limitation" reported by Plaintiff. (Tr. 22). Plaintiff argues that the objective evidence regularly demonstrates Plaintiff exhibited either an active ulceration on his left foot or a "preulcerative" callus. Plaintiff argues that the ALJ provided no explanation as to why such evidence of an ulceration did not support Plaintiff's statements about how his ulceration limited his abilities. Defendant argues that the ALJ pointed to evidence within the medical record, numerous admissions Plaintiff made in his function report, and Plaintiff's hearing testimony, all of which supported the conclusion that Plaintiff's subjective statements were less than fully consistent with the medical record. As to the left-foot ulcer, Defendant argues the ALJ noted evidence of Plaintiff's diabetes-related symptoms from even before the relevant period, including that his ulcer had been slow to heal. (Tr. 22-23). However, the ALJ noted that when Plaintiff's blood-sugar levels were under much better control, his ulcer would be doing much better until eventually the podiatrist confirmed that the ulcer was no longer active.

SSR 16-3 provides guidance as to an individual's statements regarding the intensity, persistence, and limiting effects of those symptoms. It states:

> An individual's statements may address the frequency and duration of the symptoms, the location of the symptoms, and the impact of the symptoms on the ability to perform daily living activities. An individual's statements may also include activities that precipitate or aggravate the symptoms, medications and treatments used, and other methods used to alleviate the symptoms. We will consider an individual's statements about the intensity, persistence, and limiting

5

> effects of symptoms, and we will evaluate whether the statements are consistent with objective medical evidence and the other evidence.

Soc. Sec. Ruling 16-3p: Titles II & XVI: Evaluation of Symptoms in Disability Claims, SSR 16-3P (S.S.A. Oct. 25, 2017).

The Court finds that there is substantial evidence that shows the ALJ provided an explanation as to why evidence of an ulceration did not support Plaintiff's statements about how his ulceration limited his abilities. The ALJ in her decision stated:

> Furthermore, he does have a foot ulcer, but the record does not reflect that his condition is disabling; and the claimant was unable to state how often he has difficulties with his foot ulcer and in record is not durational (e.g., Ex. 10F and hearing testimony).
>
> [Plaintiff] reported his left foot ulcer was "almost healed" and he was "doing well" on January 6, 2022 (Ex. 3F/6, 10). Further, on December 7, 2021, he attended a follow-up appointment, two weeks after left mid-foot ulcer but had no complaints of pain or discomfort; thus, his physician found his ulcer was "improved" (Ex. 1F/9-10). . . . Moreover, on March 16, 2022, he reported he was "feeling well", and on March 29, 2022, his left mid-foot ulcer showed "great improvement" and his right foot ulcer was "healed" (Ex. 7F/14, 16). Finally, on March 1, 2023, he presented with concerns of a pre-ulcerative callus on his left foot, but he had no drainage and his vascular status remained intact (Ex. 10F/8-9).

(Tr. at 22-23). The ALJ stated the objective medical evidence as contained in the record. The ALJ took this into account when finding Plaintiff's RFC and her ultimate conclusions. For the reasons stated, the Court finds there is substantial evidence to find the ALJ properly concluded that there was no "objective evidence of physiological abnormality reasonably expected to result in the degree of limitation" as it related to Plaintiff's ulceration on his left foot.

### B. Hall's Treatment was "Conservative"

Plaintiff next argues that the ALJ stated that Plaintiff's treatment of his ulceration was "conservative." (Tr. 22). Plaintiff argues that while the ALJ labeled Plaintiff's treatment as conservative, his consistent treatment with a specialist and ongoing need for debridement of his

wound demonstrates more than conservative care and thus the ALJ erred in her finding. Defendant argues that the ALJ, after review of Plaintiff's function report and hearing testimony, concluded that "[r]outine conservative treatment and recommendations suggest symptoms not as limiting as [Plaintiff] alleged." (Tr. 22). Defendant states as early as January 2022, Plaintiff's treating podiatrist observed that his blood sugar was much lower than in previous months, noted his ulceration had healed, and recommended Plaintiff apply an over-the-counter skin care ointment and engage in self-debridement once a week by using a pumice stone. (Tr. 22, 1668–69). Defendant thus argues that this conservative treatment suggestion shows that Plaintiff's own podiatrist found his left-foot ulcer was far from disabling, and at most it required maintenance via non-prescription means, even just six months into the relevant period.

The Court finds that there is substantial evidence to find the ALJ did not err in finding Plaintiff's treatment of the ulcer on his left-foot was conservative. The ALJ stated in her decision "[r]outine conservative treatment and recommendations suggest symptoms not as limiting as alleged." (Tr. at 22). While the ALJ does not explicitly note why she determined Plaintiff's treatment of his ulcer was routine, the record demonstrates that this care was indeed routine. The record shows on January 18, 2022, Plaintiff visited Mercy Clinic for follow-up on his left foot ulcer. (Tr. at 1668). The record shows that Plaintiff had no complaints of pain or concerns. *Id*. The doctor than advised Plaintiff to watch for signs of re-occurrence of the wound, recommended purchasing Aquaphor to apply to the callus daily, self-debridement once a week with a pumice stone, and to follow-up again in two weeks. *Id*.

Although the record shows a multitude of visits and evidence of doctor debridement, it is clear that Plaintiff's left-foot ulcer was improving to the point where doctor intervention for his ulcer was not necessary. The ALJ noted within her decision that on March 16, 2022, Plaintiff

7

reported he was "feeling well" and on March 29, 2022, his left mid-foot ulcer showed "great improvement" and his right foot ulcer was "healed". (Tr. at 23). The ALJ also noted that on March 1, 2023, Plaintiff presented with concerns of a pre-ulcerative callus on his left foot, but he had no drainage, and his vascular status remained intact. *Id*. The record indicates that Plaintiff was given routine conservative treatment he could effectuate on his own schedule without the need for a doctor. (Tr. at 1669). Even when seen by the doctor, the record reflects debridement was not necessary for it to be done by a professional. (See Tr. at 2008, 2091; "preulcerative callus was debrided as a courtesy today"). While regular follow-up visits were scheduled, it is apparent from the record that these were to continue to monitor Plaintiff's progression. The record, and ALJ's decision notes Plaintiff left-foot ulcer made "great improvement" based upon the treatment plan. For the reasons stated, the Court finds that there is substantial evidence in the record that the ALJ did not err in finding Plaintiff's treatment of the ulcer on his left-foot was conservative.

**C.     Failure to Explain why Recommendations were Inconsistent with Plaintiff's Statements**

Plaintiff also asserts that the ALJ stated the treatment recommendations made to Plaintiff were "conservative" but further failed to explain why such recommendations were inconsistent with Plaintiff's specific statements about his conditions. Plaintiff argues that the ALJ failed to explain why the treatment recommendations made by Plaintiff's podiatrist were inconsistent with Plaintiff's reported symptoms and limitations. Defendant argues that the ALJ considered Plaintiff's function report and hearing testimony as the basis for why she deemed the treatment recommendations made to Plaintiff were conservative. Defendant argues that the podiatrist's treatment shows that his left-foot ulcer was far from disabling, and at most it required maintenance via non-prescription means, even just six months into the relevant period. Defendant further argues that Plaintiff in his April 2023 testimony, estimated he evaluated his legs only about one hour per

week, and stated that he normally treats his ulcer by simply "wrap[ping] it up and deal[ing] with it. (Tr. 76-77).

The Court finds there is substantial evidence in the record that the ALJ's determination of the treatment for Plaintiff's left foot ulcer was inconsistent with Plaintiff's subjective statements was appropriate. Here, the ALJ stated in her decision that "the undersigned finds no persuasive corroborating evidence for duration, frequency, intensity of symptoms and limitations alleged as disabling. . . .Routine conserve treatment and recommendations suggest symptoms not as limiting as alleged." (Tr. 22). The ALJ further elaborated on Plaintiff's left foot ulcer stating that the medical evidence showed that on March 29, 2022, his left mid-foot ulcer showed "great improvement" and his right foot ulcer was "healed". (Tr. 23). While the ALJ did not explicitly cite her reason for why the treatment was "conservative" there is evidence in the record to support the finding as stated above. The Court finds there is substantial evidence in the record that the ALJ's determination of the treatment for Plaintiff's left foot ulcer was inconsistent with Plaintiff's subjective statements was appropriate.

### D. Hall's Participation in Activities

Plaintiff states the ALJ noted Plaintiff participated in activities such as caring for his children, driving an ATV, cooking, doing household chores, and doing some volunteer work. (Tr. 22). Plaintiff argues the ALJ failed to provide any explanation as to how these activities were inconsistent with Plaintiff's reported symptoms and limitations. Additionally, Plaintiff argues that contrary to the ALJ's finding, the Eighth Circuit has held similar activities to be consistent even with disabling pain. Further, Plaintiff argues the ALJ failed to consider the frequency, independence, and difficulty Plaintiff had in performing such activities.

Defendant argues that in December 2021, less than six months after Plaintiff claims to have become disabled, Plaintiff completed a function report that undermined his claims of disabling symptoms. (Tr. 241-248). Specifically in that document, Plaintiff admitted he prepared his own meals; drove a car; could go out alone; shopped by computer; helped with various household chores; took care of his personal needs without assistance; socialized by text; and did not have trouble finishing what he started. (Tr. 242-246) Defendant argues Plaintiff further indicated that he had no difficulty sitting or bending, walked without any assistive devices, and could walk up to two miles before needing to stop and rest for five minutes. (Tr. 246-247). Plaintiff also explained that he was the sole adult caregiver for his four minor children, one of whom has Down Syndrome. (Tr. 242). Defendant argues such admissions contradict Plaintiff's suggestion that his conditions caused disabling limitations.

The Court finds there is substantial evidence that the ALJ did provide an explanation as to how Plaintiff's activities were inconsistent with Plaintiff's reported symptoms and limitations. The Court finds that the ALJ did consider the frequency, independence, and difficulty Plaintiff had in performing tasks. The ALJ decision stated:

> The claimant is a 43-year-old man who alleges disability due to open heart surgery, diabetes, high blood pressure, depression, anxiety, "Toe Cut off", osteomyelitis, high cholesterol, and he was obese through the record (Ex. 1E/2 and hearing testimony). As a result, he reported trouble lifting, squatting, standing, walking, kneeling, climbing stairs, seeing, remembering, completing tasks, concentrating, following instructions, and getting along with others (Ex. 3E/6).
>
> However, the undersigned finds no persuasive corroborating evidence for duration, frequency, intensity of symptoms and limitations alleged as disabling. No objective evidence of physiological abnormality reasonably expected to result in the degree of limitation alleged. Routine conservation treatment and recommendations suggest symptoms not as limiting as alleged. In fact, he reported no trouble bending, reaching, using his hands, sitting, talking, hearing, and understanding (Ex. 3E/6). The claimant testified he takes care of four children ages 14 and under, drives, uses an ATV, cooks complete meals, does household chores, does volunteer work, and maintenance work (e.g., Ex. 3E and hearing testimony). Moreover, he can handle

> his personal care needs, handle his personal finances, do the laundry, go shopping
> in stores, and he gets along with authority figures (e.g., Ex. 3E).

(Tr. 21-22). The ALJ reported Plaintiff's alleged symptoms and limitations and found there is no persuasive corroborating evidence for duration, frequency, intensity of symptoms and limitations alleged as debilitating. The ALJ lists, amongst other reasons, how his ability to take care of four children ages 14 and under, drives, use of an ATV, ability to cook meals, complete household chores, his volunteer and maintenance work, his ability to take care of himself and his finances go against his reported symptoms and limitations. The ALJ's finding concludes that his symptoms and/or limitations are not so severe as to limit or forgo those abilities to take care of himself or his dependents. Thus, the Court finds there is substantial evidence that the ALJ did provide an explanation as to how Plaintiff's activities were inconsistent with Plaintiff's reported symptoms.

## CONCLUSION

For the reasons set forth herein, the ALJ's final determination is **AFFIRMED.**

**IT IS SO ORDERED.**

DATED: September 9, 2025

                                          */s/ Douglas Harpool*
                                          **DOUGLAS HARPOOL**
                                          **UNITED STATES DISTRICT JUDGE**